# MARYLAND REPORTS.

OCTOBER TERM, 1895, AND JANUARY TERM, 1896.

## SAMUEL S. JAY AND JOHN G. JAY vs. JOHN M. MICHAEL.

*Construction of Deeds—What Passes Under a General Description—Ejectment—Evidence to Explain the Terms of a Deed.*

In an action of ejectment, where plaintiff and defendant both claim under the same party, it is *prima facie* sufficient to prove derivation of title from that party without proving title in him.

It is the duty of the Court to construe a deed, but it is for the jury to apply its terms thus construed to the land in controversy in order to ascertain if the same is within the description. And parol evidence is admissible to explain the circumstances under which the deed was made.

In an action of ejectment a plat and description of the boundaries of land made by a former owner is not admissible in evidence when the same was not known to the defendant or the person under whom he claims, or when it is not shown that the conveyance to him was made with reference to that plat.

Plaintiffs sued in ejectment to recover a tract of land called "Horner's Fishery." The land in question had been owned by two aunts of the plaintiffs, who devised to J. for life all their real estate, and also "all that farm on or near Swan Creek, called "Mould's Success," &c., containing 335 acres, and devised to plaintiffs the remainder in fee of all their real estate. J. conveyed the farm to the defendant's grantor by the above description, after having received from plaintiffs conveyances of their interests in remainder. The deeds from plaintiffs to J. added to the above description, that the interest intended to be conveyed was the entire interest which the grantors took under the said wills. This suit was brought after the death of J. The plaintiffs offered evidence to show that "Horner's Fishery" was a distinct tract of land from "Mould's Success," while defendant contended that it was included in the deed to him. *Held*,

1st. That upon the face of the deeds from plaintiffs to J., the intention to convey *all* the real estate devised to them in remainder is not manifest.

2nd. That the deeds from the plaintiffs conveyed the farm on Swan Creek, and if any part of the same was outside of the limits of the original tract of "Mould's Success," it was conveyed under the general description, but what land the farm did include was a question of fact to be determined by the evidence.

Appeal from the Circuit Court for Harford County. This was an action of ejectment brought by the appellants to recover possession of a narrow strip of land called "Horner's Fishery," containing about nine acres, situated in the lower part of Harford County, on Swan Creek, near its mouth, where it empties into the Chesapeake Bay. The plaintiffs are the sons of the late John Jay, and nephews of Maria M. and Frenetta F. Smith. The Misses Smith died in 1860, leaving the wills hereinafter referred to, and John Jay died in 1892. The evidence showed that at the time of their decease, the said aunts of the plaintiffs were seized and possessed of a farm lying on or near Swan Creek, composed of a tract of land called " Mould's Success," and part of a tract of land called " Palmer's Point," containing in the whole 335 acres of land, and also of a tract of land called "Horner's Fishery," containing 9 acres, having acquired title in the former by deed from Priscilla Presberry and others, dated the 19th day of April, 1813, and in the latter by inheritance from their brother, Samuel Griffith Smith, who died in the year 1845. By the second clause of their wills the said Frenetta and Maria devised said farm of 335 acres, and by the third clause all the rest and residue of their real estate to their brother, John Jay, for life, and by the fourth clause they devised all their real estate to the plaintiffs in remainder in fee. The plaintiffs having given evidence of the title of their aunts, the said Maria M. and Frenetta F. Smith, to " Horner's Fishery," proved their deaths and the death of John Jay, and read in evidence the wills of their said aunts, closed their case.

The defendant claimed title in himself to "Horner's Fishery" through the plaintiffs, by virtue of four deeds which he gave in evidence, one from each of the plaintiffs to John Jay, dated the 26th day of March, 1872, and the 7th day of February, 1883, and one from said John Jay and wife to James B. Baker, dated the 5th of February, 1889, and one from said James B. Baker and wife to himself, dated the 22d of April, 1893, contending that the plaintiffs by their said deeds not only conveyed to their father their interest and estate in said farm of 335 acres, composed of a tract called "Mould's Success" and part of a tract called "Palmer's Point," but also conveyed "Horner's Fishery," and that the same was conveyed to said Baker by John Jay and to the defendant by Baker.

The deed from J. G. Jay, one of the plaintiffs, to John Jay, granted "all my interest and estate in and to all that farm and premises lying and being on or near Swan Creek, in Harford County, aforesaid, composed of a tract of land called "Mould's Success," and part of a tract of land called "Palmer's Point," containing in the whole three hundred and thirty-five acres of land, more or less, being the same lands and premises mentioned and described in the hereinbefore mentioned wills of the said Marion M. Smith and the said Frenetta F. Smith, and by them the said Marion M. and Frenetta F. devised to my father, the said John Jay, for and during his natural life only, with the remainder in fee simple to me, the said John Goldsmith Jay, and my brother, Samuel Smith Jay; the interest intended to be hereby conveyed being the entire interest and estate which I, the said John Goldsmith Jay, have taken or may take under and in virtue of the aforesaid wills of the said Marion M. Smith and Frenetta F. Smith." The deed from the other plaintiff to John Jay was similar in its terms.

The plaintiffs also offered evidence to show that "Horner's Fishery" was reputed to be a distinct tract of land from "Mould's Success;" that before the conveyance by John Jay to Baker, the former had rented "Horner's Fishery"

separately as a fishing shore, although there was no division fence between the two tracts.   After that conveyance Baker claimed that "Horner's Fishery" was included in the deed, but this claim was denied by John Jay.

The deed from John Jay to Baker, under whom defendant claimed, conveyed "all that certain farm, situate in or near Swan Creek, in the Second Election District of said county, composed of parts of tracts or parcels of land called "Mould's Success" and "Palmer's Point," or by whatsoever name or names the same may be known or called, containing three hundred and thirty-five (335) acres of land, more or less, being the same farm which Maria Matilda Smith and Frenetta F. Smith, by their last wills and· testaments, &c., respectively, devised to the said John Jay, their brother of the half blood, for life, with remainder over unto Samuel Smith Jay and John Goldsmith Jay, etc."

After the defendant had offered his deeds in evidence the Court below (WATTERS, J.) stated that as the plaintiffs claimed title to "Horner's Fishery" described in the declaration, under the said will of said Maria M. and Frenetta F. Smith, given in evidence by appellants, he was prepared to decide that the deeds from John G. Jay to John Jay, and Samuel S. Jay to John Jay, and John Jay to James B. Baker, and James B. Baker to John M. Michael, given in evidence by the defendant, conveyed said "Horner's Fishery" to the defendant.

The plaintiffs as evidence in rebuttal, tending to prove that they had not conveyed to John Jay, their father, their title and interest to the land in dispute, read a deed from Priscilla Presbury and others to Samuel G. Smith, Frenetta F. Smith and Maria M. Smith, conveying a tract called " Mould's Success," 314 acres, and part of " Palmer's Point," 21 acres; and also a deed from Jane Shipley and others to Samuel G. Smith for an undivided part of " Horn er's Fishery," 9 acres, and then offered certain plots and courses and distances, all in the handwriting of John Jay. To this last offer the defendant objected, and the Court sus-

tained the objection and excluded the evidence, and this ruling is the substance of the first bill of exceptions.

The Court then, at the instance of the defendant, instructed the jury that there was no legally sufficient evidence to entitle the plaintiff to recover. To which ruling the plaintiffs excepted, and this is the second bill of exception. The verdict and judgment being for the defendant, the plaintiffs appealed.

The cause was argued before BRYAN, McSHERRY, BRISCOE, ROBERTS and BOYD, JJ.

*John S. Young* and *James J. Archer* (with whom was *Henry W. Archer*, *Jr.*, on the brief), for the appellants.

The appellants contend that the prayer granted by the Court is erroneous, because it neither points out any particular ground on which the plaintiffs' right to recover was denied, nor does it direct the attention to any particular error or omission in proof.

The appellants' title to " Horner's Fishery " did not pass by their two deeds to John Jay. When we come, then, to construe these deeds, if we will bear in mind that at the time of their execution the appellants had but a qualified interest and estate in the farm and premises in or near Swan Creek, composed of a tract of land called " Mould's Success," and part of a tract of land called " Palmer's Point," containing in the whole 335 acres of land, being an estate in remainder, subject to the life estate of their father, John Jay, which they acquired under the wills of their aunts, Maria M. and Frenetta F. Smith, it is difficult to conceive how the language used in said deeds can be held to be either uncertain or ambiguous. There is but one description in the deeds. It might, perhaps, be divided into several parts, yet it forms but a single description.

There are no general words in these deeds. Even if there were, they would not control, but would have to give way to the particular description. If, then, the words used in this descriptive clause are neither indefinite, uncertain

nor ambiguous, and there is but one clause, then, by force of what—for certainly there are no general words—can these deeds be held to convey " Horner's Fishery," the property mentioned in the declaration ?   If they are held to convey " Horner's Fishery," then they are equally effective to convey all other land of which the said 'Maria M. and Frenetta F. Smith died seized.   If the grantors, in addition to the farm and premises, composed of a tract of land called " Mould's Success," and part of a tract called " Palmer's Point," had intended to convey all the rest of the real estate they acquired under the wills of their aunts, can it be seriously asserted that they would have employed such language as is used in these deeds ?   3 *Washburn*, pp. 424 and 426 ; *Morrell* v. *Fisher*, 4 Exchequer, 591 ; *Mims* v. *Armstrong*, 31 Md. 87 ; *Zittle* v. *Weller,* 63 Md. 200 ; *Hope* v. *Hutchens*, 9 G. & J. 77.

The Court was in error in refusing to admit in evidence the plot and course and distances, because as an ancient document it was admissible to show the lines of Mould's Success and Palmer's Point, mentioned in the two deeds from the appellants to John Jay.

*Stevenson A. Williams* and *George L. Van Bibber*, for the appellee.

The defendant contends that by a proper construction of the two deeds to John Jay, from his sons, the plaintiffs, it was the manifest intention of the grantors to convey, and of the grantee that he was receiving the whole of the " Mould's Success" farm, including its shore front, described in the declaration as "Horner's Fishery."   The controversy in this case depends entirely upon the construction of the language used in the two deeds from the plaintiffs to their father, John Jay, for the purpose of determining whether the description of what was intended to be conveyed, included the strip of land in controversy.   Whatever difficulty there may be in reaching a proper understanding of the intention of the parties, arises, not between two contra-

dictory or repugnant clauses in the deeds, but between different sections of one sentence describing the property conveyed.

But it is contended that this comprehensive sentence containing the description of the interest granted, continues with a reference to the deed from Priscilla Presbury and others, for a more specific description of the land conveyed, or in other words, while the language describing the property conveyed states it as being *all the interest and estate which they acquired under the wills of their aunts,* yet the subsequent description limited the scope of the previous general words, and confined the property conveyed to only such land as was included in the Presberry deed. This contention of the plaintiff to limit the intention of the parties by giving to the last description, which is special, a greater significance than they do the two previous ones, which are general, and where they do not agree, does violence to the true mode of construing deeds. This Court has recently decided that where there are two descriptions, one general and the other special, and they do not agree, grantee may rely on that description which is most beneficial to him. *Winter* v. *White,* 70 Md. 305 ; *Bott* v. *Burnell,* 11 Mass. 163. If the special limiting clause can be reconciled with what precedes it, then, of course, the particular description will limit and restrain the operation of the more general words. *Mims* v. *Armstrong,* 31 Md. 87. But here, to give to these last words of description the effect asked for by the plaintiffs, violence must be done to the plain import of the preceding words, which are inserted for the apparent and evident purpose of making it clear that the intention of the two sons was to convey to their father all the estate derived by them from their aunts, and the intention of the father was to receive all this and no less. That the father so understood is evidenced by the fact that he permitted his grantee to enter into possession of the disputed land, and did not during the three years he afterwards lived take any steps to eject him.

Calling to our aid in construing the language of the son's deeds, as we are entitled to do, the subject-matter to which it refers, namely, the tracts " Mould's Success " and " Palmer's Point," admittedly constituting the farm sold by their father to the defendant's grantor, and the tract " Horner's Fishery " constituting, on plaintiff's own showing, a part of said farm by its location with reference to the other tracts, and by the way it was used by John Jay and its former owners, we have a very strong confirmation of the view that " Horner's Fishery " was a part of the Swan Creek or " Mould's Success " farm, and that after referring to the farm by general words, as is done in their deeds, it was but reasonable and correct afterwards to describe it as all the interest and estate they took under their aunts' wills.

If by its location and use " Horner's Fishery " was a part of the Swan Creek or " Mould's Success " farm, part of it being included in one of the arable fields of said farm, part of it being navigable water front, and part of it the usual roadway used for watering live stock thereon, then it should pass under the words in each of those deeds which precede the warranty clause, namely : " Together with the buildings and improvements thereupon erected, made or being, and all and every the rights, roads, ways, waters, privileges, appurtenances and advantages to the same belonging or in anywise appertaining."

Boyd, J., delivered the opinion of the Court.

The appellants instituted an action of ejectment against the appellee for a tract of land known as " Horner's Fishery," which was alleged in the declaration to be adjacent to a tract called " Mould's Success," and is described by courses and distances.   The plaintiffs claim under the wills of their aunts, Frenetta F. Smith and Maria M. Smith, who died in 1860.   They offered evidence tending to prove that Samuel G. Smith, a brother of the Misses Smith, was in possession of " Horner's Fishery " at the time of his death in 1845, and that the Misses Smith then entered and took possession of

the same as his only heirs at law, and continued in the exclusive, peaceful possession thereof until they died, when John Jay, the father of the plaintiffs, took possession of it, and so continued until his death in 1892. The Misses Smith devised to John Jay for life "all that farm and premises, lying and being on or near Swan Creek in the said (Harford) County, composed of a tract called "Mould's Success," and part of a tract called "Palmer's Point," containing in the whole three hundred and thirty-five acres, more or less," etc. By the third clause of their respective wills they each devised to said Jay for life all the rest and residue of their real estate, or such part thereof as they died siezed and possessed of, or entitled to. They then devised the remainder in all their real estate to the plaintiffs. The plaintiffs offered the wills and testimony tending to show that "Horner's Fishery" was a separate and distinct tract from "Mould's Success" and "Palmer's Point." The defendant introduced in evidence four deeds, one from James B. Baker to the defendant, one from John Jay and wife to Baker, one from Samuel Smith Jay, and another from John G. Jay to John Jay. The last two are practically alike.

It is contended by the defendant that these deeds conveyed all the interest of the plaintiffs in "Horner's Fishery" to their father, John Jay, who conveyed it to Baker and Baker to the defendant, and the proper construction of them is the important question presented to us by this record. It is only necessary to consider the two last named deeds, as we are only called upon to determine what the plaintiffs have conveyed away, and not what John Jay undertook to convey. Let us take for example the deed from Samuel Smith Jay. It recites that he became entitled to an undivided interest in fee simple in the lands and premises therein mentioned and described by the wills of Maria M. and Frenetta F. Smith, and grants the following: "All my interest and estate in and to all that farm and premises lying and being on or near Swan Creek, in Harford County, aforesaid, composed of a tract of land called "Mould's Success"

and part of a tract of land called "Palmer's Point," containing in the whole, three hundred and thirty-five acres of land, more or less, being the same lands and premises mentioned and described in the hereinbefore mentioned wills of the said Maria M. Smith and Frenetta F. Smith, and by the said Maria M. and Frenetta F. devised to my father, the said John Jay, for and during his natural life only, with the remainder, in fee-simple, to me, the said Samuel Smith Jay, and my brother, John Goldsmith Jay, the interest intended to be hereby conveyed being the entire interest which I, the said Samuel Smith Jay, have taken or may take under and in virtue of the aforesaid wills of the said Maria M. Smith and the said Frenetta F. Smith, and which said farm or parcel of land is particularly described in a deed from Priscilla Presbury, John Moores and others," etc. It is contended on the part of the appellee that Samuel Smith Jay conveyed by this deed his interest in *all* the real estate devised to him by said wills, and that through this and the other deeds above mentioned, the defendant became the owner of the tract in controversy. The Court below adopted that view and granted a prayer that under the pleadings there was no legally sufficient evidence to entitle the plaintiff to recover.

The deed from Priscilla Presbury and others to S. G. Smith and others, conveyed the tract called "Mould's Success," containing three hundred and fourteen acres, more or less, exclusive of elder surveys and water, and part of "Palmer's Point," containing twenty-one acres, more or less, but is there anything on the face of the deeds to John Jay from his two sons which would necessarily indicate an intention to convey "Horner's Fishery," if that be a separate and distinct tract from "Mould's Success" and "Palmer's Point?". They describe the property as "all that farm and premises lying and being on or near Swan Creek," and it is contended that "Horner's Fishery" is a part of that farm, although the deeds add that the farm is "composed of a tract of land called "Mould's Success," and part of a tract of land called "Palmer's Point," containing in the whole, three hundred

and thirty-five acres of land, more or less." It is urged by the appellee, however, that the subsequent clause in the deed, which says "the interest intended to be hereby conveyed being *the entire interest and estate* which I, the said Samuel Smith Jay, have taken or may take under and in virtue of the aforesaid wills," etc., clearly shows the intention of Samuel Smith Jay (and the deed from J. G. Jay is similar), to convey *all the real estate* he acquired by these wills. But this clause is again qualified and limited by adding " and which said farm or parcel of land is particularly described in a deed from Priscilla Presbury" and others. The expression the " interest intended to be hereby conveyed being the entire interest and estate," etc., may have been used to describe the quality of the estate in the farm intended to be conveyed, not necessarily to mean the entire property devised by the Misses Smith, if they had real estate other than the two tracts. The deed from Jane Shipley and others to Samuel G. Smith tends to show that Samuel G. Smith recognized that there was a separate tract called " Horner's Fishery," as by it there was conveyed to him an undivided half-interest in that tract, whilst Priscilla Presbury and others had previously conveyed to him and his two sisters the other two tracts, and there was other testimony to the effect that " Horner's Fishery " was a separate and distinct tract from "Mould's Success" and " Palmer's Point," and was not a part of the farm known as " Mould's Success Farm." The defendant claimed his title through the same source that the plaintiffs did, or to speak more accurately, claimed it through the plaintiffs themselves. It was not necessary, therefore, for the plaintiffs to prodnce evidence to establish the title beyond the Misses Smith in order to make out a *prima facie* case, for it is well settled that when the plaintiffs and defendant in an ejectment suit are claiming title through the same party, it is " *prima facie* sufficient to prove derivation of title from that party without out producing any patents or deeds to prove title in him." *Ahern* v. *White*, 39 Md. 423 ; *Elwood* v. *Lannon's Lessee*,

27 Md. 200. The plaintiffs did, however, produce some testimony tending to show such adverse possession and user of the tract by those under whom they claim as to entitle them to recover it unless the defendant's construction of these deeds be correct.

We do not think that the intention to convey all the real estate devised by the wills, or this particular tract, is so clear and manifest as to justify the Court in determining from the face of the deeds that "Horner's Fishery" was conveyed. We are of the opinion, however, that it was intended to convey the *farm* of the Misses Smith on Swan Creek, but whether the land sued for is embraced in that farm or is separate and distinct from it, is a matter of proof. If the farm, as generally understood, included the land sued for, the plaintiffs cannot recover. But, as already said, the plaintiffs offered some evidence to show that "Horner's Fishery" was separate and distinct from "Mould's Success" and was not considered a part of the farm known as "Mould's Success Farm." We think, therefore, the Court below was in error in granting the prayer of the defendant. There was a question of fact to be determined by the jury under proper instructions of the Court. It is true it is the duty of the Court to construe a deed, but it is for the jury to apply its terms when thus construed to the land in controversy to ascertain whether the premises in question are within the description. 3 *Wash. on Real Prop.*, 409. Parol testimony can be offered to explain the circumstances under which the deed was executed. Proof of these circumstances is intended to place the Court, as far as possible, in the position of the parties, so it can intelligently interpret the language used. When all pertinent and admissible facts are before the Court, it can then better determine what was meant, although of course parol testimony must be admitted with great caution.

In the case of *Winter* v. *White*, 70 Md. 305, the plaintiff claimed title under a deed which conveyed to him "all those tracts or parcels of land situate in Howard County, consti-

tuting the farm of which the late Theodore R. S. Boyce died seized," followed by a reference to the several deeds under which Boyce acquired title, and also to a survey of said tracts of land in which the metes and bounds, courses and distances were given. The deed and the survey did not embrace a strip of ground which was included in the farm, but the Court held that the deed passed or conveyed all the farm upon which Boyce resided at the time of his death and of which he was then seized, whether the particular description given by the surveyor and mentioned in the deed covered it or not. So we think that the true construction of these deeds is, that they intended to convey the farm of the Misses Smith, on or near Swan Creek, and even if there be any part of the "*farm*" outside of the limits of the original tracts, "Mould's Success" and "Palmer's Point," it was conveyed under the general description. But what land the *farm* in point of fact included must be determined by evidence.

The Court was clearly right in refusing to permit the plot with accompanying description to be put in evidence. So far as the record discloses there was no proffer to show that the defendant or John Jay's grantee had any knowledge of such plot, or that the purchase was made with reference to it. We know of no ground upon which it could have been admitted at the instance of the plaintiffs, and there was no error in rejecting it. But as the Court erred in granting the defendants' prayer the judgment must be reversed.

*Judgment reversed with costs to the appellants, and new trial awarded.*

(Decided November 15th, 1895.)