MARYLAND STATE FAIR, Incorporated, *vs.*
BASILICUS H. SCHMIDT et al.

*Deeds for Purpose of Partition—Effect of Recitals—Disclaimer.*

In construing the recitals in a deed, the primary object is to
ascertain and give effect to the intention of the parties, where
that can be done without violating any principle of law, and
that intention may be gathered from the language of the entire
deed.                              p. 621

Where the import of the language of a deed is doubtful, and the intention can be reached in no other way, it should be construed against the grantor and in favor of the grantee.  p. 621

To ascertain the true meaning of a deed the situation of the parties and the circumstances attending the execution may be considered.                              p. 621

In the case of conveyances by a trustee to each of the various persons interested in a tract of land, a recital in each conveyance that the grantee therein was willing to accept the portion so conveyed as his or her "full share" of "said real estate," *held* not to involve a disclaimer by such grantee of all interest in a residuum of the tract, which was, partly as a result of mistake, unallotted, and so not included in any of such conveyances, the preferable construction being that "said real estate" applied only to the total acreage actually allotted, excluding the unallotted residuum, which was at the time practically worthless.                      pp. 621-624

*Decided February 26th, 1925.*

Appeal from the Circuit Court for Anne Arundel County (PARKE, C. J.).

Action by Basilicus H. Schmidt and others against the Maryland State Fair, Incorporated. From a judgment for certain of the plaintiffs, defendant appeals. Affirmed.

The cause was argued before BOND, C. J., URNER, ADKINS, OFFUTT, DIGGES, and WALSH, JJ.

*C. Alex. Fairbank* and *Frank B. Ober,* with whom were *Ogle Marbury* and *Janney, Ober, Slingluff & Williams* on the brief, for the appellant.

*Washington Bowie,* with whom were *Stephen W. Gambrill* and *Garner W. Denmead* on the brief, for the appellees.

OFFUTT, J., delivered the opinion of the Court.

Being seised as tenants by the entireties of a tract of land, containing about one hundred and twenty-two acres, in Anne Arundel County, near the present location of the Laurel

race track, Adolph Schmidt and Louisa his wife, on July 24th, 1888, joined in a deed conveying it to Louisa Schmidt, the wife, in trust to hold, use, occupy, and enjoy it during her life upon the payment of taxes, and at her death, upon their payment of certain charges aggregating nine hundred dollars against the property, the grantors conveyed the home and ten acres surrounding it to Kate Schmidt, wife of Jonah Boyle, a daughter, and eighteen acres to Augustus, a son, and the remainder in equal shares to their other children, Mary S. S. (the wife of C. Wesley Jess), Basilicus, Alexander Oscar, Emma (the wife of John S. Boyle), and Henry, subject to a privilege reserved to Adolph to occupy during his life, upon certain conditions, a part of the property.

Alexander renounced the provision for him in the deed and his interest was acquired by Augustus. The other children paid off the charges against the property, and in 1895 the trustee and life tenant, acting under a power contained in the deed, agreed with the remaindermen to allot and grant to them certain portions of the property, and accordingly, to carry out that agreement, they had the property surveyed. Prior to the survey the parties in interest had agreed that Wilhelmina Katherine, also called Kate, Schmidt should receive an equal share with the other children, and the surveyor was directed to apportion the property which they then believed contained 118 acres, so as to give to Gustave, also called Augustus, 18 acres, and to each of the other children who took remainders under the deed of trust 16.6 acres. The survey, however, disclosed the fact that the tract contained 122 acres, but when the parties were informed of that fact, the surveyor had already platted the property, setting off 18 acres for Augustus and 16.6 acres for each of the other children and a residuum of 4½ acres was left as an unallotted parcel on the plat. It was then agreed that, rather than incur the expense of a resurvey, deeds would be prepared allotting and conveying the property in accordance with the plat and the descriptions which the surveyor had prepared, and that was accordingly done.

On February 10th, 1896, Louisa Schmidt, trustee, and Adolph Schmidt conveyed to Augustus in fee the 18 acres given him by the deed of trust, and later he was granted Alexander's part, which fully satisfied all his claims against the estate, and he thereafter had no further interest in it. On April 12th, 1897, the same parties, with all their children but the grantee, joined in a deed conveying to Wilhelmina K. Schmidt 16.6 acres in lieu of the 10 acres given to her by the deed, and which she accepted in lieu thereof, so that that grant fully satisfied the provisions made for her in the deed and she had no further interest in the remaining property. The remaining lots, containing 16.6 acres, were then conveyed by several deeds respectively to Henry, Basilicus, Emma, and Mary. By these deeds the entire tract was conveyed in fee to the several children of Adolph and Louisa Schmidt (excepting Alexander) who took remainders under the deed of trust, excepting the lot of 4½ acres, which is the subject matter of this proceeding. Manifestly, unless the life tenant and remaindermen had united in some disposition of that lot, the title to it remained in them as tenants in common, and that is the theory for which the appellees contend in this case.

In 1902, Louisa Schmidt as an individual conveyed that 4½ acre lot to Emma J. C. Boyle, trustee, from whom by various mesne conveyances the claim of the appellant in this case is derived, and it asserts that the appellees are estopped by certain recitals in the partition deeds from claiming any interest in that lot, and these two contentions present the issue in this case.

Under the deed from Louisa Schmidt to Emma J. C. Boyle, trustee, the grantee held the property in trust for her own use until her daughter Irene should attain the age of eighteen, and then for the use of her daughter until she should become twenty-one years old and then to her in fee. Irene subsequently married Julian Studds of Del Ray, Virginia, and on May 29th, 1911, she united in a deed conveying such interest as she had in the 4½ acres to one Samuel L.

Hopkins, who appears to have been acting as agent for the Laurel Four County Fair Association, which needed it to carry out a plan for increasing the size of its track. Hopkins promptly conveyed the property to the race track company, of which the appellant here is the successor, and it has also acquired and holds the interest of Emma J. C. Boyle in the whole property.

There is some conflict in the evidence as to whether the race track company or its privies had actual notice at the time it acquired the 4½ acre property, or before it improved it, that any of the appellees claimed an interest in it, but there is some testimony that it did have such notice.

It is agreed in the case that the fair value of the racing franchises, real estate and improvements, and other property owned by the appellant, is $750,000 and that its race track crosses a part of the land in question.

On September 1st, 1922, Basilicus H. Schmidt and others, claiming an interest in the 4½ acres under the deed of trust to Louisa Schmidt, brought an action in ejectment in the Circuit Court for Anne Arundel County against the appellant for the possession of that tract of land. That case in due course was tried before the court sitting as a jury, and at the conclusion of the trial a judgment was entered for Basilicus H. Schmidt, Mary L. Jess and Henry Schmidt for three-fourths undivided moiety of the property described in the declaration, for one dollar damages, and costs, and from that judgment the present appeal was taken.

The defendant offered twenty-two prayers. The court granted five and rejected seventeen of these prayers, and granted a special instruction of its own. Without discussing them in detail, it is sufficient to say that, if the appellees were entitled to recover at all, the granted prayers correctly stated the law and submitted the case fully and fairly to the court sitting as a jury. The real and controlling question in the case is presented by the action of the trial court in refusing certain prayers of the defendant, which rested on one of these propositions, that by accepting the partition

deeds the several grantees named in them disclaimed any interest in the 4½ acre residuum, and were thereby barred from recovering any such interest in this action, or that the recitals in those deeds characterized the possession by Louisa Schmidt the trustee as adverse. Since the correctness of those rulings and indeed the case itself turns upon the construction given the several deeds of partition, we will now examine and compare so much of the language contained in them as is material to this inquiry.

A recital in the deed from Louisa Schmidt, trustee, and her husband, for 18 acres, to Gustave contains this language:

"And whereas the said Gustave Schmidt, her son, has paid his one-seventh part, the sum of one hundred and thirty-three dollars ($133.00), and the said Louisa Schmidt desires to convey said 18 acres hereinafter particularly described to said Gustave Schmidt clear of her life estate and all claims and incumbrances whatsoever, the mortgage therein mentioned having been paid and released, the judgment paid and satisfied and the other debt which was due said Louisa Schmidt having also been paid as to said Gustave Schmidt's share."

The recital in the deed conveying 16.6 acres to Emma T. S. C. Boyle contains this language:

"Whereas * * * certain real estate was conveyed to the said Louisa Schmidt in trust and among other trusts that she might at any time convey to any one or more of his children his, her or their share of said real estate upon payment by any one or more of them of his, her or their share or part of certain indebtedness in said deed named. And whereas Emma T. S. C. Boyle, her daughter, has paid her one-seventh part or share of said indebtedness, being the sum of one hundred and thirty-three dollars, and the said Louisa is desirous to convey to her the part or portion of the real estate aforesaid to which the said Emma is entitled free and clear of her life estate therein. And whereas the said Emma T. S. C. Boyle is willing to accept the part or portion of said real estate herein

described and intended to be hereby conveyed to her
as her full share or portion of said real estate, and
whereas it is the intention of the other children of
the said Louisa Schmidt herein named and the wives
of the sons to join herein with their father, the said
Adolph Schmidt, to convey to the said Emma T. S.
C. Boyle the hereinafter described portion or part of
said real estate as her part or share thereof free,
clear and discharged of any or all claims by or from
any or either of them."

And the recitals in the deeds to Basilicus, Mary, and
Henry are identical in form with that last mentioned. The
recital in the deed to Wilhelmina, who received 6.6 acres
more than that mentioned as her part in the deed of trust to
Louisa, after reciting that she had paid her proportion of
the indebtedness, continues as follows:

"And the said Louisa is desirous to convey to her
the portion or part of the real estate aforesaid which
is herein mentioned and described as her said Wil-
helmina's part thereof free and clear of her said
Louisa's life estate therein. And whereas by the
deed aforesaid there was apportioned to the said Wil-
helmina K. Schmidt only the amount or number of
ten acres of said real estate. And whereas the said
grantors herein are desirous that the said Wilhelmina
should share equally with the other children in the
division of the real estate aforesaid; and whereas
the said Wilhelmina K. Schmidt is willing to accept
the part or portion of the said real estate herein de-
scribed and intended to be conveyed to her as her
full share or portion of said real estate."

Upon comparing these deeds, all of which collectively were
designed to effect a single plan or purpose, it is found that,
in the deed conveying the 18 acres to Augustus or Gustave,
the property conveyed is described as the "small house and
18 acres of land" referred to in the deed, while in the deed
to Wilhelmina the property conveyed is described as "the
portion or part of the real estate aforesaid which is herein

mentioned and described as her * * * part thereof," while in
the recitals in the deeds to the other children the land con-
veyed was described as "the part or portion of the real
estate aforesaid to which the said" grantee was entitled.

The reason for this difference was no doubt that whereas
Gustave received exactly what the deed of trust gave him,
and Wilhelmina received more than that deed gave her, the
others were entitled as tenants in common to the residuum
left after the subtraction of those two interests, and the
language employed clearly indicated that the purpose of
the deeds conveying 16.6 acres each respectively to Basilicus,
Henry, Emma and Mary was to convey to them the part or
portion of the whole residuum to which under the deed of
trust to Louisa they were entitled, and it is equally clear that
it did no such thing, because each of them was entitled to
receive about three-fourths of an acre more than was con-
veyed by those deeds. And when the meaning of the recital
that each of the last mentioned children "is willing to accept
the part or portion of said real estate herein described and
intended to be hereby conveyed to her as her full share or
portion of said real estate" is considered, it must be con-
sidered in connection with the recital that the grantors in-
tended to convey to such grantees the whole part of the
residuum to which they respectively were entitled under the
deed, and it must also be noted that Louisa Schmidt indi-
vidually was not a party to any of these deeds and that they
were deeds poll.

So that the contention of the appellant amounts to this,
that by accepting the deeds conveying to them each 16.6 acres
the appellees in this case waived, released, or discharged any
interest in the 4½ acres which was not specifically described
in the deeds, in favor of a person not named in them either
as grantor or grantee. It may be noted too, in connection
with that contention, that had the owners thereof intended
to convey to Louisa Schmidt as an individual the 4½ acres,
there was no apparent reason why they should not have done
so by a deed, as it outlines were shown by courses and dis-

tances on the same plat on which the outlines of the other
lots were indicated.

An examination of the recitals in the deeds to Basilicus,
Henry, Mary, and Emma discloses an obvious conflict be-
tween the recital of the intention of the trustee and the
recital as to the intention of the grantees, for whereas the
former states that the trustee desired to grant the part or
portion of the real estate to which the grantee was entitled,
which was approximately 17-1/3 acres, the latter stated that
the grantee was willing to accept the part described in the
deed, which is 16.6 acres.   The question therefore occurs,
did the parties intend that the grantees should receive less
than the grantors intended to grant.   In construing these
recitals our primary object should be to ascertain and give
effect to the intention of the parties, where that can be done
without violating any principle of law and that intention
may be gathered from the language of the entire deed (*Buc-
hanan's Lessee v. Steuart,* 3 H. & J. 329), and in such an
inquiry, where the import of the language is doubtful and
the intention can be reached in no other way, it should be
construed against the grantor and in favor of the grantee.
*Zittle v. Weller,* 63 Md. 190.   And to ascertain its true
meaning the situation of the parties and the circumstances
attending the execution of the deed may be considered.
*Brown v. Reeder,* 108 Md. 653; *Chesapeake Co. v. Gold-
berg,* 107 Md. 488; *Roberts v. Bonaparte,* 73 Md. 199.

The appellant contends very ably and ingeniously that the
appellees meant to disclaim their interest in the 4½ acres,
but, considering the facts in the light of the principles we
have stated, we cannot agree with that contention.

When we consider what all the parties were engaged in
doing, what it was they were dealing with, and what plan
they were executing, there can be no real doubt as to their
intention.   They were dealing with an entire tract of land
containing 122 acres.   They believed, however, that it con-
tained but 118 acres, and, believing that, they apportioned
it so as to divide among themselves 118 acres, which they

believed was the whole tract. That apportionment was
based in part and for the greater part on the language of
the deed of trust to Louisa, because under that deed five of
the grantor's children held the title to the balance of the
tract left after the subtraction of the shares of Augustus
and Wilhelmina, subject only to the life estate of Louisa and
the privilege reserved to Adolph. They desired to allot im-
mediately to each one entitled the share which he or she
would possess at the death of the life tenant, and to free each
part granted from the interest of the life tenant, and of
Adolph and of the interest which each of the children (other
than the one to whom it was allotted) had to it. When
therefore we come to consider the meaning of the words con-
stituting the so-called disclaimer we must consider that lan-
guage in connection with these circumstances.

The first striking circumstance is that it runs in favor
of no named person; it is, if it is anything, at large, and to
find a beneficiary we must resort to implication and arbi-
trary rules. We must assume that the *cestuis que trust,* if
they intended to surrender it to any one, intended to sur-
render to their original grantors the 4½ acres, although they
expressed no such intention, because we could not assume
that they intended to surrender it to the life tenant. In
that capacity she was not a party to the deeds. Nor could
we assume that they intended to surrender it to the trustee,
without some clear expression of such an intention, because
the general rule is that a trustee shall not take beneficially
from the *cestui que trust. Perry on Trusts,* par. 195. So
that if the *cestuis que trust* intended to disclaim or repudiate
the gift of the 4½ acres, they could only have done so for
the benefit of the grantors, and if we could admit that they
succeeded in doing that, the title to the 4½ acres remained
in Louisa and Adolph as tenants in common, for when the
partition deeds were executed they had been divorced *a
vinculo et matrimonii.* But it is clear that they did not
intend to do that, because it is nowhere suggested, either by
the deeds or the testimony, that they desired to benefit

Adolph, or that he desired any part of the 4½ acres. It is suggested without any apparent foundation in fact that the appellees and the others then in interest desired to give this 4½ acres to Louisa to compensate her for her life estate, but that suggestion is obviously unreasonable. It is incredible that any competent conveyancer would have failed to express so important an agreement in the deeds of partition if there had been one, and it further appears that, after having paid off the mortgage indebtedness once, the children at the time the 118 acres was divided paid the amount of it to their mother again, which in itself would have been some compensation for her life estate.

In our opinion, therefore, the recital in the several partition deeds to the appellees, that they accepted the land described in them as their "full share" of "said real estate," applied only and was limited to the 118 acres with which the parties were dealing, and was not intended to and did not relate to the 4½ acre tract. As we have already stated, when the excess acreage was discovered the survey had already been made in accordance with a division based upon an erroneous idea of the number of acres in the tract. To have resurveyed it would not only have been expensive, but if, as indicated in the appellant's brief, the 4½ acre lot was practically worthless, a redivision based upon the true acreage would also have necessitated an appraisal of the whole property, because one of the lots would have included the worthless property. A more convenient and equitable method would have been the one adopted, to divide the improved land, and to let the title to the unimproved land remain as an entirety in those entitled to the whole tract. And for the reasons stated we concur in the following view expressed by the trial court: "As the unit of partition was the surveyed 118 acres, and as none of the deeds conveyed any portion of land other than those forming this unit, and as each part of this unit was to be held in severalty after this voluntary partition by virtue of every grantee on his part relinquishing all claim to every other part which was

conveyed to his former cotenant in common from this particular unit of 118 acres as laid off by survey, it must follow that the recital in the deeds relied on by the defendant is confined and limited to the surveyed 118 acres, the unit of partition, and did not affect the remaining undivided parcel of four and one half acres of land of which no mention is made in the deeds and which constituted a distinct unit of land, and which was not attempted to be divided."

It follows that we find no error in the refusal of the several prayers referred to.

The only other prayers to which it is necessary to refer particularly are the defendant's thirteenth and fifteenth prayers, which are based upon the theory that after executing the several deeds of partition Louisa held the 4½ acre tract adversely as a necessary consequence of the recitals in those deeds. The premise of that conclusion is that when Louisa agreed to surrender her life estate she annexed to that agreement a condition that the beneficiaries should waive or surrender their interests in the 4½ acres. There is no evidence in the record in support of that premise, and the conclusion based on it must therefore fail, and it becomes unnecessary to discuss the legal principles involved in it. We have gone over the remaining prayers very carefully and have been unable to discover any error in the rulings as to them, nor are there any errors apparent in the seven exceptions relating to the court's rulings upon matters of evidence.

Finding no errors in the rulings involved in the exceptions in this case, the judgment appealed from will be affirmed.

*Judgment affirmed, with costs.*