BROWN ET AL. *v.* WHITEFIELD ET UX.

[No. 207, September Term, 1960.]

*Decided May 3, 1961.*

The cause was argued before BRUNE, C. J., and PRESCOTT, HORNEY, MARBURY and SYBERT, JJ.

*John M. Robb,* with whom was *Paul J. Yeager* on the brief, for appellants.

*Milton Gerson* and *John Sullivan,* for appellees.

SYBERT, J., delivered the opinion of the Court.

This action was brought to determine the ownership of a lot of land, improved by a dwelling, in Frostburg. Appellees, Mr. and Mrs. Whitefield, claim complete title. Appellants, Mrs. Brown and Mrs. Cook, together claim an undivided two-thirds interest. The trial court found in favor of the White-fields, and Mrs. Brown and Mrs. Cook appealed. Solution of the controversy requires a determination of the legal effect of three deeds and a will. Both sides agree on the facts, but not on the proper interpretation of the documents involved.

William T. Parker and his wife had two children—Betty Jane Brown and Catherine Cook, the appellants. After a divorce William married his second wife, Alice K. Parker, by whom he had no children. In 1932 William's mother, Margaret Parker, conveyed to him alone the lot involved in this case, which was part of a larger parcel acquired by her from Samuel Johnson in 1897. William built a house on his lot and lived in it with his wife until his death in 1958.

William's mother, Margaret, died a widow in 1948. By her will she devised all of her property equally to her seven children then living. In January, 1949, six of them and their spouses, including William and Alice, executed a deed to a brother, James A. Parker, for two parcels of land, one being the whole property which had been conveyed to Margaret by Samuel Johnson in 1897. No exception, reservation or mention was made of the lot which Margaret had conveyed to William out of the parcel in 1932. However, immediately after

the descriptions and title references of the two parcels, the following recital appears in the deed:

> "All of the parties to this deed are *heirs of Margaret Parker,* late of Allegany County, deceased who *at the time of her death owned these properties* and who by her will which will is recorded in Liber W, folio 140, Wills' Record, Orphans' Court for Allegany County, Maryland *devised the properties* to the said parties of this deed. The said parties of the first part are now desirous of conveying their interest *received under the will* to James A. Parker and *for that purpose joined in this deed."* (Emphasis supplied.)

Eight months later, in September, 1949, James A. Parker, who was unmarried, conveyed the same two parcels to a brother, John F. Parker, and his wife.

William sought a mortgage loan on his lot in August, 1950, and the attorney who examined title for the lender discovered that the lot had not been expressly excepted from the heirs' deed to James. Thereupon John and his wife executed a deed of the lot to William and Alice, as tenants by the entireties. This deed recites that the January, 1949, deed from the other heirs to James inadvertently did not except the lot which Margaret Parker had conveyed to William in 1932, and that it had not been the intention of William and Alice, in executing that deed, to convey William's own lot to James. The record does not disclose whether William requested the scrivener of the deed from John and his wife to draft it so that the grant would be to William and Alice as tenants by the entireties, or whether the scrivener did so upon his own initiative. This question would appear immaterial in view of our disposition of the case.

William died intestate on January 3, 1958, survived by his widow, Alice, and by Mrs. Brown and Mrs. Cook, his children by his first marriage and only issue. Alice died testate on December 30, 1959, and by her will devised all of her

property to her sister and brother-in-law, Charlotte and Paul Whitefield, the appellees.

The Whitefields assert sole ownership of William's lot under Alice Parker's will. Mrs. Brown and Mrs. Cook claim that each of them owns a one-third interest as heir of William, and that the Whitefields own the remaining one-third interest as devisees under Alice's will. Their reasoning is that by the deed from the heirs of Margaret Parker to James, William did not intend to, *and in fact and in law did not,* convey his separate lot to James. This being so, they say, the subsequent deed from James to John and wife conveyed no interest in William's lot, and hence John and wife had nothing to transmit when they executed the deed purporting to convey the lot to William and Alice as tenants by the entireties. Since this deed was completely nugatory, they continue, William had sole title when he died and therefore Alice's attempted devise of the whole to the Whitefields can only be given effect as transmitting the one-third interest which she took as surviving widow from her intestate husband.

The Whitefields proceeded upon the theory that William did convey his lot, along with the property of which his mother died seized, when he joined in the heirs' deed to James. They maintain that the description and title reference in the deed include William's lot, since it was not expressly excepted. They admit that the recital in the deed indicates that a mistake was made in including William's lot, and that William could have filed suit to have the deed reformed. They hold that when William chose another course, and had the property conveyed to him and Alice by the entireties, this expressed his will and purpose and must be given effect. They maintain that the heirs' deed to James was not void but only voidable, with respect to William's lot, and that since no proceeding was brought to declare it void, it must stand.

Within a few months after Alice Parker's death the Whitefields filed suit against the Browns and Cooks in the Circuit Court for Allegany County, in Equity, under the Uniform Declaratory Judgments Act (Code, 1957, Art. 31A), for a decree declaring the rights and interests of the parties

to the property in question. The trial court ruled in favor of the Whitefields.

A careful review of the facts and the law leads us to conclude that the appellants are correct in their position, and that the decree below was erroneous.

The first and controlling question here is the legal effect of the deed from the heirs to James, in order to ascertain what was actually conveyed thereby. It is well settled that in construing a deed, the effect which most nearly accords with the intention of the parties is given the first consideration unless to do so would violate some rule of law. *Adams v. Parater,* 206 Md. 224, 111 A. 2d 590 (1955); *Weiprecht v. Gill,* 191 Md. 478, 62 A. 2d 253 (1948). Thus, we must look to the intent of the parties here to determine what land they meant to convey. *Whittington v. Mann,* 211 Md. 199, 126 A. 2d 617 (1956); *Jay v. Michael,* 82 Md. 1, 33 Atl. 322 (1895). In essence what we must do is to place ourselves, to the degree possible, in the same situation and circumstances as the parties—to occupy their seats, so to speak— at the time the instrument was executed, and in this vicarious role to seek the result intended by the parties. *Whittington v. Mann, supra; Hodges v. Owings,* 178 Md. 300, 13 A. 2d 338 (1940); Restatement, *Property,* § 241. The language used by the parties will of course be of utmost importance in ascertaining their intent. *Whittington v. Mann, supra; Weiprecht v. Gill, supra; Maryland State Fair v. Schmidt,* 147 Md. 613, 128 Atl. 365 (1925).

Consideration of the language in the deed in question would seem to require the conclusion that no title or interest of any kind in William's lot passed under the deed to James. The recital, which is part of the granting clause, makes it clear that the parties executed it as "heirs of Margaret Parker", who "at the time of her death owned these properties" and "devised the properties" to the parties to the deed. Such statements could not apply to William's lot, which his mother had conveyed to him years before and which therefore she did not own at her death and could not devise. The parties to the deed made it clear, beyond question, as to what

they[?] intended to convey when they further stated that they were desirous of conveying their interest "received under the will" and "for that purpose joined in this deed." They received no interest in William's lot under their mother's will, and it is manifest that William and the others did not join in the deed for the purpose of conveying it. Indeed, the deed from John and wife to William and Alice acknowledges that the lot should have been excepted from the heirs' deed to James, and recites that in executing that deed it was not the intention of William and Alice to convey the lot to James.

We think that the case of *Zittle v. Weller*, 63 Md. 190 (1885), is controlling here. In that case Bachtel conveyed an undivided one-third interest in his lands to his mother for life, retaining the reversion. He later sold the lands to Weller, the granting clause conveying in general his entire interest and estate in the lands. However, it was then recited in the deed that the interest conveyed was "the two-thirds of the above described land". After the death of both Bachtel and Weller, Bachtel's daughter sought partition, claiming ownership of the one-third reversion, against Weller's heirs, who claimed the entire lands. As the Court stated, the sole question was the construction of the deed from Bachtel to Weller. After stating that the intention of the parties must prevail, and that every word in the deed must be given effect, the court ruled that the general grant of all Bachtel's interest in the lands was restricted by the words which followed, and consequently the one-third interest did not pass under the deed, but remained in Bachtel and passed to his daughter. The Court said, at page 197:

> "In the deed before us, the descriptive words with which the granting clause starts out, would be sufficient to carry all the interest of the grantors in the property, if there were no words added to indicate that less than the whole land, or less than all the grantor's interest therein was being granted; but there are words, and most material words added to the description, restricting the estate conveyed to two-thirds of the property described. * * *"

See also *Jay v. Michael, supra,* 82 Md. 1, 33 Atl. 322 (1895).

We do not deem it necessary to labor the point further. We hold that by joining in the January, 1949, deed with the other heirs, William T. Parker did not convey to James A. Parker any interest in the lot which he had acquired from his mother in 1932, but that the deed to James was valid in all other respects. We further hold that the deed from James to John and wife likewise conveyed no interest in William's lot, and that therefore the deed whereby John and wife attempted to convey the lot to William and Alice as tenants by the entireties was a nullity. It follows that William had sole title to the lot when he died intestate, that Mrs. Brown and Mrs. Cook each inherited an undivided one-third interest therein, that Alice took the remaining undivided one-third interest as his surviving widow, and that this one-third interest is all that passed by her will to the Whitefields.

It appears from the record that William Parker mortgaged his lot to Irving Millenson in 1950, and that he owed an outstanding balance thereunder at his death. It also appears that William's widow subsequently refinanced the mortgage by a new mortgage loan from Mr. Millenson, out of which the amount due on William's previous mortgage was presumably paid. No question was raised on this appeal as to the relative rights (or duties) of the parties with respect to these mortgage debts, and therefore we do not undertake to decide them.

> *Decree reversed; case remanded for such further proceedings not inconsistent with this opinion as may be appropriate, and for the passage of a decree in conformity with this opinion; costs to be paid by appellees.*