GREEN, TRUSTEE *v.* ELDRIDGE ET UX.

[No. 68, September Term, 1962.]

*Decided January 28, 1963.*

*Motion for rehearing filed February 20, 1963, denied March 8, 1963.*

The cause was argued before BRUNE, C. J., and HAMMOND, HORNEY, MARBURY and SYBERT, JJ.

*William B. Evans,* with whom were *Kintner & Evans* on the brief, for appellant.

*Donald S. Cohan,* with whom was *Edward D. E. Rollins, Jr.,* on the brief, for appellees.

SYBERT, J., delivered the opinion of the Court.

This is an appeal from an order of the Circuit Court for Cecil County, in equity, dismissing a bill of complaint which alleged that the appellees, by dredging and constructing a marina, have interfered with a roadway in which the appellant claims fee simple ownership under a deed from the appellees' predecessor in title. Appellant asked for an injunction against continued dredging operations for the marina and an award of money damages for the appellees' actions in making more difficult the construction of the roadway claimed under the deed.

The properties of the parties lie near the town of Fredericktown in Cecil County. The acreage of the appellees, Mr. and Mrs. Eldridge (defendants below), is closer to the town and is adjoined on the west by the five acre tract of the appellant, John Powell Green, Trustee (plaintiff below), known as the "Duffy Lot". Both properties front on the north shore of the Sassafras River, a large, navigable watercourse. This case involves a stream and marsh located on the western portion of the Eldridge property, near the Green property, and extending northerly from the north side of the River. The stream, known as "Duffy Creek", is a drainage stream that drains from a gully to the north and east of the marsh, flowing through the marshy area to the River.

On September 23, 1929, one Philemon Lloyd, predecessor in title to the Eldridges, executed a deed, entitled on its face "Right of Way Deed", to Robert M. Green, Jr., predecessor in title to appellant. The granting clause granted and conveyed "in fee simple, the free and uninterrupted use, liberty and privilege of, and passageway in and along a certain right of way which shall be laid out" by the grantee over the property of the grantor. The right of way is described by metes and bounds. In general terms, it begins at Orange Street in Fredericktown, located directly east of the Lloyd—now Eldridge—property, and runs westerly, 12 feet in width, for a distance of 399 feet along the southern boundary of that tract to an area called the garage location, where the lines provide an offset upon which Green and his heirs and assigns were to

have the right to construct and maintain a garage. From the garage location the right of way then runs northerly, 16 feet in width, for a distance of 66 feet to a stake at the foot of a willow tree on the eastern border of the marsh, and then northwesterly, 16 feet in width, for a distance of 334.30 feet across Duffy Creek and the marsh until it intersects the eastern boundary of the grantee's land (the "Duffy Lot").

Under the terms of the deed the grantee was to "locate a road or right of way" for the use of the grantee-owner of the Duffy Lot and the grantor-owner of the Philemon Lloyd property, and their heirs and assigns, from Orange Street to the waters of the Sassafras River, at or near the garage location. It was provided that no fence or obstruction should be erected upon either side of the right of way between the garage location and the willow tree at the border of the marsh, so that each of the parties would have unobstructed ingress and egress to and from the waters of the Sassafras River.

The deed then states that the parallel lines (16 feet apart) which run from the willow tree on the eastern border of the marsh, northwesterly across the marsh to the Duffy Lot, "are for the purpose of location (*sic*) the position upon which the said Robert M. Green, Jr., his heirs and assigns may have the privilege of erecting a bridge, road or causeway across the marsh to connect his garage location on the eastern side of the marsh with his 'Duffy Lot' on the western side of the marsh".

After a paragraph describing the maximum size of the garage structure which the grantee would have the right to build, the significant portions of the deed for purposes of this dispute are concluded by the habendum clause which provides, in substance, that the grantee, and his heirs and assigns, were to have and hold all the rights, privileges, appurtenances and advantages aforesaid "forever in fee simple, in common with" the grantor, and his heirs and assigns, and that the expenses of maintaining the "road or way" should be borne equally by the owners, for the time being, of the Duffy Lot and the Lloyd property.

In the more than 30 years since the 1929 deed, the record shows that neither the appellant nor his predecessor in title took action of any kind toward constructing a roadway, garage, or bridge or causeway across Duffy Creek and the marsh, nor did they pay any taxes on the land over which the proposed roadway was to run. It was shown in the case that appellant's actual access to the Duffy Lot is by a right of way over properties to the north, the right to which he established by an equity proceeding in 1949. Beginning in 1956 appellees obtained permits from the Corps of Army Engineers and commenced dredging Duffy Creek and the marsh for the marina, which is now partially completed. Although it was shown that appellant had notice of the work in progress, he did not file the instant suit until May, 1960, seeking an injunction against the construction, and damages. After a hearing, the Chancellor found that the 1929 deed did not convey a fee simple interest, but granted a right of way only, subject to the terms and conditions expressed therein; that Duffy Creek and a large part of the marshy area were subject to the ebb and flow of the tide and were navigable in fact when the deed was given, so that title thereto was in the State of Maryland, with the result that the attempted grant of easement over that area was void; and that the appellant is entitled to an easement over that part of the right of way which extends over appellees' fast land from Orange Street to the willow tree at the eastern edge of the marsh, including use of the garage location, the court being of the opinion that there was insufficient evidence of abandonment or estoppel of this right. The court passed an order dismissing the bill of complaint.

Appellant's position is that the 1929 deed granted a fee simple interest in the whole length of the right of way, from Orange Street to the Duffy Lot, and that the appellees have deprived him of a portion of this fee by dredging the marsh and stream and building the marina athwart the right of way. Appellees. on the other hand, claim (1) that the 1929 deed granted only an easement; (2) that even if a fee simple interest was conveyed, appellant could not prevail as to the disputed strip across the creek and the marsh, because it traversed

navigable water and therefore was State property not subject to conveyance by the grantor; and (3) that the appellant has lost any rights he may have had in the way by non-user or estoppel.

The most important issue presented here is, from a practical standpoint, the question whether the Chancellor was in error in determining that Duffy Creek and a large part of the marsh were navigable when the 1929 deed was executed. Appellant concedes that if the 16-foot strip extending from the willow tree across the creek and marsh to appellants' property ran across navigable water, his predecessor could not have acquired title to that portion of the right of way from Lloyd because such title would have been vested in the State of Maryland. *Wagner v. City of Baltimore,* 210 Md. 615, 124 A. 2d 815 (1956); *Clark v. Todd,* 192 Md. 487, 64 A. 2d 547 (1949).

The *Wagner* case, just cited, is the most recent case in which this Court has had occasion to consider the test or tests for determining whether or not waters are navigable. Chief Judge Brune, for the Court, made an exhaustive review of the decisions and pointed out that although the Court had originally adopted the ancient tidal test, i.e., that waters were considered navigable if they were subject to the ebb and flow of the tide, the more recent cases on the subject have also recognized the navigable in fact test—whether waters in their natural state are in fact navigable—without specifically overruling the earlier test.

We think that under the evidence in the instant case, as in *Wagner,* it makes no difference which test is adopted, so that a choice between them is unnecessary. Although there was some dispute as to the exact portion of the marsh and the stream that was subject to the ebb and flow of the tide and was susceptible to light navigation, we feel that there was sufficient testimony to support the Chancellor's finding that the marsh and the stream were tidal and navigable in fact to a point above the strip granted for the right of way. A number of the inhabitants of the neighborhood testified as to the presence of and movement by boats of various sizes in the

disputed area. In fact, it was testified that Mr. Ross, who preceded the Eldridges in ownership of the Lloyd property, had rented out boats in this area, some of which he kept at a dock well above the right of way line. A former employee of Mr. Ross testified that he went to and from work in a motorboat, regardless of whether the tide was low or high, tying up the boat at Mr. Ross' dock. This and other testimony by witnesses for both parties as to the depth of the water and the traffic of small boats amply warranted the Chancellor's finding that the creek and the part of the marsh in dispute were navigable. Since it is not necessary to a stream's being navigable in fact that it be capable of carrying large vessels, or support a flow of commercial traffic, the fact that smaller boats are shown to have traversed the strip is sufficient. *Wagner v. City of Baltimore, supra* (at p. 626 of 210 Md.) ; *Toy v. Atlantic Gulf & Pacific Co.,* 176 Md. 197, 206, 4 A. 2d 757, 762 (1939).

Thus, the State of Maryland, and not Lloyd, held title to that portion of the stream and marsh which was navigable, and hence so much of the grant in the 1929 deed as was designed to traverse the navigable area must fail. The Chancellor found, in effect, that the area occupied by the marina was navigable, and on the record presented we cannot find that he was clearly wrong. On the other hand, the Chancellor sustained the grant as to the portion of the way east of the marsh. We think the same result must apply to that portion of the way west of the marina.

We turn now to consideration of the question as to whether the 1929 deed granted a fee simple interest, or only an easement, in the portions of the way which do not traverse navigable water. In determining the nature and extent of an estate or interest granted by a deed, the instrument must be construed so as to best effectuate the intention of the parties. This is accomplished by a consideration of the instrument as a whole, viewing the language employed in light of all the facts and circumstances of the transaction. *Brown v. Whitefield,* 225 Md. 220, 169 A. 2d 920 (1961) ; *Whittington v. Mann,* 211 Md. 199, 126 A. 2d 617 (1956). An examination of the deed before us and the circumstances attending its

execution justify the conclusion that it granted an easement only, with the fee remaining in the original grantor, his heirs and assigns.

The situation which evoked the disputed deed was as follows. In 1929 Robert M. Green, Jr., appellant's predecessor in title, was in possession of property on the western side of the marsh to which there was no access from the eastern, or Fredericktown, side. Lloyd, the predecessor in title of the appellees, was willing to allow the use of his property (or what he thought was his property) for such access if, in return, Green would construct a roadway for use in common along the southern part of the former's property running to the creek and the river. Viewing the instrument itself in this perspective, we think there are several factors which support the Chancellor's finding that only a right of way was granted. Although the title given to an instrument is not, of itself, determinative as to the interest conveyed thereby, it is nevertheless some indication as to the intention of the parties. In this case the language of the deed gives weight to the conclusion that the deed was intended to convey the interest indicated by its title—a right of way. The wording of the granting clause, conveying "the free and uninterrupted use, liberty and privilege of, and passageway in and along a certain right of way", is inconsistent with an intent to make an absolute, fee simple grant of title. The statements that the "right of way" should be maintained and used by both parties, their heirs and assigns, in common; the wording of the grantee's authorization to erect a bridge, road or causeway across the marsh in terms of a *privilege,* and the fact that the grantee was merely given the "right to construct and maintain" a garage on the bank of the river, all indicate that it was the intention of the parties to establish only an easement, despite the inadvertent use of the phrase "in fee simple" in the granting and habendum clauses. The fact that the word "easement" was not used to designate the property interest passing is not of particular significance, since use of the phrase "right of way" is generally understood to mean that only an easement is being granted. *Richfield Oil Corp. v. Railroad Co.,* 179 Md. 560, 20 A. 2d

581 (1941), and cases cited. Had there been an intention to convey a fee, then the grantee would have had the right to use the land as he saw fit without being subject to the approval of the grantor. We cannot suppose that the words of limitation were placed in the deed for no purpose. See *Hodges v. Owings,* 178 Md. 300, 13 A. 2d 338 (1940). While some of the language in the habendum clause was such as is usually found in a fee simple deed, as a general rule where the habendum clause conflicts with, or is repugnant to, the granting clause, the latter will prevail. *Adams v. Parater,* 206 Md. 224, 111 A. 2d 590 (1955) ; *Literski v. Literski,* 166 Md. 641, 171 Atl. 874 (1934). We do not find that the Chancellor was wrong in holding that only an easement was granted.

At argument before us, appellant pointed out that while the Chancellor found he is entitled to an easement extending from Orange Street to the garage location and the eastern edge of the marsh, the Chancellor dismissed his bill of complaint. He maintains that the order should be reversed, if for no other reason than for the passage of a decree declaring his right to so much of the easement. Also at argument the appellees conceded appellant's right to an easement from Orange Street to the garage lot, and his right to erect and maintain a garage thereon. The concession renders it unnecessary for us to consider the other point raised by appellees in their brief— whether appellant lost his rights in the way by abandonment or estoppel. However, in view of our finding that appellant is entitled to an easement or right of way from Orange Street to the eastern edge of the marsh, including use of the garage lot, as well as an easement or right of way from the western side of the marina to the Duffy Lot, the order dismissing the bill of complaint will be reversed for the passage of a decree in conformity with this opinion, and affirmed as to all other matters.

> *Order affirmed in part and reversed in part, and case remanded for the passage of a decree in conformity with this opinion; costs to be paid one-half by appellant and one-half by appellees.*